**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rachel Soale, | No. CV-25-00773-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| eXp Realty LLC, | |
| Defendant. | |

Pending before the Court is Defendant eXp Realty, LLC's ("Defendant") Motion to Dismiss Plaintiff Rachel Soale's ("Plaintiff") Class Action Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 12). For the reasons discussed below, Defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff is an Arizona resident and the owner of phone number (304) 695-XXXX, a personal residential telephone number, which she registered with the Federal Communication Commission's ("FCC") Do-Not-Call Registry ("DNC Registry") in 2008. (Doc. 1 at 2-3). Defendant "is a global real estate brokerage." (*Id.* at 2).

In January 2025, Plaintiff received "numerous telephone calls and text messages from (520) 772-4900," all relating to her 2024 attempt to sell her house on the Multiple Listing Service ("MLS"). (*Id.* at 3). The calls were not made directly by Defendant. (*See*

---

[1] This recitation of the facts accepts as true any non-conclusory factual allegations made by Plaintiff in her Complaint, construed in the light most favorable to her.

*Id.* at 3-5; Doc. 12 at 2).  Rather, the calls, "prerecorded voice[mail] messages," and texts came from the Joshua Jackson Realty Group.  (Doc. 1 at 3).

In one voicemail, a male voice says: "Hey this is Josh Jackson at eXp Realty."  (*Id.* at 5; Doc. 16 at 6).  Joshua Jackson is a licensed Arizona real estate agent and an independent contractor with Defendant, listed on Defendant's national website "as one of its licensed real estate agents," and operates the Jackson Realty Group.  (Doc. 1 at 5; Doc. 12 at 1, 3).  Jackson's Arizona licensure lists Defendant as his employer.  (Doc. 1 at 5; Doc. 16 at 7).

According to Defendant's Independent Contractor Agreement ("IAC"), its affiliated "real estate agents are independent contractors and not employees."  (Doc. 12 at 3).  Defendant's real estate agents "receive commission, not salaries, . . . are responsible for their own taxes and benefits[,]" and must "comply with 'all applicable laws, rules, and regulations when providing' services."  (*Id.*).

The messages from Jackson Realty Group "expressly acknowledge that they are sent for the purposes of convincing Plaintiff to list her property through [Jackson], and not to continue any ongoing relationship or transaction."  (Doc. 1 at 6).  Nonetheless, the links provided in the text messages took Plaintiff to a website which "prominently features Defendant's logo and branding" and contains "an electronic booklet touting [Defendant's] program to 'guarantee' that it will sell a consumer's home within 23 days."  (*Id.* at 5).

Plaintiff believes that "Defendant obtained [her] telephone number via records searches or third-party databases that link the suspected telephone numbers of homeowners . . . , searching for expired listings to thereafter offer real estate services to those homeowners."  (*Id.* at 6).  Defendant advertises "[p]owerful lead generation platforms" to potential agents, "along with training and mentorship for lead generation techniques."  (*Id.* at 7).  "Defendant receives a portion of commission proceeds derived from any representation of a consumer by its affiliates and employees."  (*Id.* at 7-8).  Indeed, Defendant's business relies on the following policy, which defines Defendant's relationship with its real estate agents:

> All real estate brokerage relationships established for any real estate transactions, regardless of agency status, exist solely as between eXp and the client (or customer), and not as between Agent and the client (or customer). Agent provides real estate services to the client (or customer) on eXp's behalf; all listings taken by Agent in connection with eXp's business are and remain the separate and exclusive property of eXp, and not of Agent. During the Term of this ICA, Agent shall diligently carry out Agent's duties on behalf of eXp with all reasonable skill, care, and diligence as expected of a licensed real estate professional in Agent's state(s) of licensure.

(*Id.* at 8).

Defendant's website allows consumer to opt-in to communications from Defendant "directly or by a third party vendor . . . acting on [Defendant's] behalf" through phone calls or text messages, "including marketing and promotional messages, using an automatic telephone dialing system, related to [Defendant's] products and services for real estate transactions, even if [the consumer's] name appears on the 'Do Not Call' list." (*Id.*). Plaintiff "did not give her prior express written consent to Defendant to send solicitation or telemarketing messages to her cellular telephone." (*Id.* at 5, 7). Nor did she "request real estate services from Defendant, . . . use Defendant's website or submit any inquiries on it, [or] . . . otherwise communicate with Defendant prior to receiving these telemarketing communications." (*Id.* at 6).

## DISCUSSION

### I.    Legal Standard: Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

- 3 -

Indeed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. In reviewing the complaint and any appropriately considered documents,[2] the Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court will not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## II.    Application

Plaintiff's Class Action Complaint alleges that Defendants have violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its implementing regulations. (Doc. 1 at 2). The TCPA provides private causes of action based on violations of its provisions or the regulations it authorizes. 47 U.S.C. § 227(b)(3), (c)(5). A plaintiff may sue under a theory of direct liability or a theory of vicarious liability—under "federal common-law principles of agency." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018).

In Count I, Plaintiff alleges that Defendant directly or vicariously violated the TCPA's autodialer provision "by delivering artificial or prerecorded voice messages to Plaintiff's cellular telephone number without prior express consent." (Doc. 1 at 12-13). Indeed, the TCPA prohibits any person from making a call[3] using an automatic telephone dialing system ("ATDS") to "any telephone number assigned to a . . . cellular telephone service" absent "prior express consent of the called party." 47 U.S.C. § 277(b)(1)(A)(iii);

---

[2] Though considering evidence outside the pleadings generally requires the Court to "convert the 12(b)(6) motion into a Rule 56 motion for summary judgment," the Court can "consider certain materials—documents attached to the complaint, documents incorporated by reference . . . —without converting the motion." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). Here the parties both rely on Defendant's IAC, which was incorporated by reference in the Complaint and in the parties' briefing on this Motion to Dismiss.

[3] A text message is a "call" for the purposes of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

47 C.F.R. § 64.1200(a)(1)(iii).  Regulations promulgated by the FCC further specify that this prohibits any person, without "prior express written consent of the called party," from using an ATDS to "initiate or cause to be initiated, any telephone call [to a cellular telephone service] that . . . constitutes telemarketing."[4]  47 C.F.R. § 64.1200(a)(2).

In Count II, Plaintiff alleges that Defendant, either directly or vicariously, violated the FCC's DNC Registry Regulations.  (Doc. 1 at 13-14).  These regulations prohibit any telephone solicitation[5] to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."  47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(3)(F).  The private right of action associated with this prohibition only allows a called party to sue if they "receive[] more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" FCC regulations.  47 U.S.C. § 227(c)(5).

Plaintiff claims that Defendant is liable for the actions of its alleged agent, Jackson, through actual or apparent authority, or by ratification.  (Doc. 1 at 12-14).  Plaintiff further alleges that she "suffered actual harm as a result of the calls at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance."  (*Id.* at 9).

As discussed below, although Plaintiff fails to state her claims of direct liability or vicarious liability based on actual authority, she does state her claims of vicarious liability based on apparent authority and ratification.

### A.    TCPA Liability

To state a claim as to Count I for use of an autodialer, Plaintiff must plausibly allege that (1) Defendants called her number, (2) using an ATDS, (3) without her consent.  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); 47 U.S.C. § 227(b).  As to Count II for DNC Registry violations, Plaintiff must plausibly allege that (1) Defendants called her number, (2) which was on the DNC Registry, (3) more than once

---

[4] "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(13).

[5] "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person . . . ."  47 C.F.R. § 64.1200(f)(15).

in any 12-month period.  47 C.F.R. § 64.1200(c)(2); 47 U.S.C. §§ 227(c)(3)(F), (c)(5).  The first element of each claim can be fulfilled by alleging direct liability or by alleging vicarious liability which, under the TCPA, requires "an agency relationship, as defined by federal common law, between the defendant and a third-party caller."  *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd* 577 U.S. 153 (2016).  It is only this first element of Plaintiff's claims which Defendant here challenges in its motion to dismiss. (Doc. 12 at 2).

### 1.    Direct Liability

To be directly liable under the TCPA, a defendant must call or text a consumer or cause a consumer to be called or texted.  47 U.S.C. §§ 227(b)(1)(A)(iii), 227(c)(5); 47 C.F.R. §§ 64.1200(a)(1)(iii), 64.1200(c)(2).  In other words, a defendant is not "directly liable for a violation of the TCPA unless it initiates a call."  *Dish Network*, 28 FCC Rcd. at 6582.  "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities . . . that might merely have some role, however minor, in the causal chain that results in the making of a telephone call."  *Id.* at 6583.  But a defendant with substantial involvement "in the placing of a specific telephone call"—such as "giving the [caller] specific and comprehensive instructions as to timing and the manner of the call" may be directly liable. *Id.*

Here, though Plaintiff alleges that Jackson called and texted her on Defendant's behalf, she does not allege that Defendant was so involved in the call as to be plausibly subject to direct liability.  She highlights the fact that Jackson identified himself as "Josh Jackson at eXp Realty" in one of his voice messages to her and that some of the messages contained links referencing eXp, but without allegations of specific or comprehensive instructions given by Defendant to Jackson, this fact at most allows an inference that Jackson was calling on behalf of Defendant. (*See* Doc. 1 at 4; Doc. 16 at 6).  Even accepting Plaintiff's interpretation of Arizona law governing real estate licensing and brokerages, the language she quotes from the statutes only require "reasonable supervision and control,"

(Doc. 16 at 7-8), not the "specific" and "comprehensive" control that the FCC has identified as possible basis for direct liability, *Dish Network*, 28 FCC Rcd. at 6583. She makes no factual allegations that Defendant controlled the content or manner of the communications she received. *Cf. Hollis v. eXp Realty LLC*, No. c25-0822, 2025 WL 2711424, at *3 (W.D. Wash. Sept. 23, 2025) (relying on plaintiff's allegations that multiple messages were received which were explicitly made on behalf of Defendant; that Defendant "controlled the content of the calls"; and that "the language of the questions asked" indicated that Defendant provided "the same or similar scripts" to callers, to find that the allegations collectively supported an inference that Defendant could plausibly be found directly liable).

Accordingly, Plaintiff fails to state a claim on either Count I or Count II on a theory of direct liability. Because it may be possible, however, for Plaintiff to amend her Complaint to allege the degree of comprehensive and specific control necessary for plausible claims of direct liability, she is granted leave to amend. Fed. R. Civ. P. 15(a)(2).

### 2.    Vicarious Liability & Agency

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (quoting Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006)). To establish an agency relationship for the purposes of liability under the TCPA, a plaintiff may rely on theories of "actual authority, apparent authority, and ratification." *Jones*, 887 F.3d at 449 n.3 (citing *Dish Network*, 28 FCC Rcd. at 6584); *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017). These relationships are governed by federal common law agency principles of vicarious liability as defined by the Restatement (Third) of Agency. *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (first citing *Dish Network*, 28 FCC Rcd. at 6586 n.100; and then *Gomez*, 768 F.3d at 877-78).

As an initial matter, "[w]hether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship." *Henderson*, 918 F.3d at 1073 (quoting Restatement (Third) of Agency § 1.02). Although "independent contractors are not ordinarily agents," in the context of vicarious liability, an independent contractor status "does not *preclude* a finding that the [independent contractor] is also an agent for some purposes." *United States v. Bond*, 608 F.3d 495, 505 (9th Cir. 2010). Thus, Defendant's treatment of its real estate agents as independent contractors and explicit disclaimer of "an agency relationship between [Defendant] and its real estate agents" in its ICA (Doc. 12 at 7) do not alter the Court's analysis of whether Plaintiff plausibly states a claim premised on vicarious liability.

### a.     Actual Authority

Actual authority requires the principal to authorize the agent to act on the principal's behalf. Restatement (Third) of Agency § 3.01. Such authorization may be express or implied but will be considered "actual authority" if "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Express authority requires explicit oral or written communication of authorization, *NLRB v. Dist. Council of Iron Workers*, 124 F.3d 1094, 1098 (9th Cir. 1997) (citing *Haw. Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 755 (9th Cir. 1969)). Implied authority is derived from express authority, where the agent acts consistently with directions given by the principal. *Id.* (citing *Haw. Paradise Park*, 414 F.2d at 755).

If an agent's actions are inconsistent with the scope of their actual authority, they may still have acted with actual authority if the agent reasonably believed that they were so authorized to act. Restatement (Third) of Agency § 2.01. But actual authorization will not apply to an agent's actions if the defendant expressly and specifically prohibits that action. *Jones*, 887 F.3d at 450 (finding that a telemarketing agent was not actually

authorized to use robo-calls in violation of the TCPA despite general authorization to market on the defendant's behalf because the defendant "expressly prohibited" the use of certain "marketing tools," specifically "robo-calling.")  In such cases, an agent could not reasonably believe that their act was actually authorized.  *Id.*

Here, Plaintiff has not plausibly alleged that Defendant actually authorized Jackson to call or text her in violation of the TCPA.  The language of the ICA generally provides that all real estate agents associated with Defendant—such as Jackson—must comply with "all applicable laws, rules, and regulations" in any activities associated with Defendant. (Doc. 12 at 3 & n.1, 9).  As noted above, the key issue in assessing actual authority is the agent's reasonable belief that they were authorized so to act.  Restatement (Third) of Agency § 2.01.  Yet Plaintiff makes no allegation, nor does she argue, that Jackson reasonably believed he was authorized to make calls on behalf of Defendant that violated the TCPA.  (*See* Doc. 1 at 8, 12-14; Doc. 16 at 8-14).  Thus, even assuming that there was an agency relationship between Jackson and Defendant, Plaintiff has not plausibly alleged that Jackson had actual authorization to violate the TCPA.

Accordingly, Plaintiff fails to state a claim for vicarious liability based on actual authority on either Count I or Count II.  Because it may be possible, however, for Plaintiff to amend her Complaint to allege that Jackson reasonably believed that he was authorized to make calls that violated the TCPA despite the ICA's language to the contrary, she is granted leave to amend.  Fed. R. Civ. P. 15(a)(2).

### b. Apparent Authority

Apparent authority arises when the principal manifests to a third party that the agent has authority to act on the principal's behalf, and the third party relies on that manifestation, creating a reasonable belief that the agent is so authorized.  Restatement (Third) of Agency § 3.03.  For apparent authority to apply, the principal must make some manifestation that the agent is acting on their behalf *prior* to the agent's actions with the third-party that seeks to bind the principal.  *Id.*  "[C]laimed authority or purported . . . exercise" of that authority

by the alleged agent does not suffice; the third-party must reasonably rely on "something said or done" by the principal. *NLRB*, 124 F.3d at 1099 (quoting another source).

Though Plaintiff fails to plausibly allege an actual agency relationship under the general prohibition in the ICA, that agreement is not controlling in an apparent authority inquiry. Defendant is correct that Jackson's statements that he was calling on Defendant's behalf cannot establish apparent authority. (Doc. 12 at 2, 6). But Defendant is incorrect in its assertion that it made no manifestations to Plaintiff that Jackson was authorized to act as its agent. (*Id.* at 10-11). Plaintiff alleges that Defendant's website lists Jackson as one of its licensed real estate agents (Doc. 1 at 5); that Defendant's website references that third parties like Jackson may contact consumers on its behalf (*Id.* at 8); and that Defendant publicly advertises that it "provides lead generation training and mentorship . . . to its agents" (*Id.* at 7; Doc. 16 at 12). In other words, Plaintiff received messages from someone purporting to work for Defendant and upon visiting Defendant's website, found that Defendant displayed Jackson as one of its real estate agents, purported to provide training for real estate agents like Jackson, and had given Jackson access to its branding and logos. Taken as true and considered cumulatively, these allegations of Defendant's manifestations would plausibly support a reasonable belief that Jackson was an authorized agent of Defendant.

Accordingly, Plaintiff states a claim as to Counts I and II under a theory of vicarious liability through apparent authority. Defendant's Motion to Dismiss is denied to the extent that Plaintiff's claims rely on this theory.

**c.     Ratification**

Finally, a plaintiff may seek to impute liability to a defendant for the acts of a purported agent. *Kristensen*, 879 F.3d at 1014. A defendant may ratify such acts even in the absence of an agency relationship or when such acts go beyond the scope of an existing agency relationship. *Henderson*, 918 F.3d at 1074 (describing the application of the Restatement (Third) of Agency in *Kristensen*, 879 F.3d 1010). Valid ratification has the same effect as actual authorization such that a principal may be bound to the actions of the

agent if the principal "affirm[s] . . . a prior act which did not bind him but which was done or professedly done on his account." *Mavrix Photographs*, 873 F.3d at 1055 (quoting Restatement (Second) of Agency § 82 (Am. L. Inst. 1958)); Restatement (Third) of Agency § 4.01. Accordingly, ratification can only apply where the actor was or purported to be an agent of the defendant. *Kristensen*, 879 F.3d at 1014-15 (citing Restatement (Third) of Agency § 4.03 & cmt. b).

Even if "[t]he doctrine of ratification," *id.* at 1014, does apply and the principal manifests their assent—through words or conduct—to be bound by the purported agent's acts, the ratification is only valid if the principal assents with knowledge "of the material facts involved in the original act." *Henderson*, 918 F.3d at 1073-74 (citing Restatement (Third) of Agency §§ 4.01, 4.06). For example, a defendant may manifest asset and ratify an act "by receiving or retaining benefits it generates if [it] has knowledge of material facts." *Id.* at 1075 (quoting Restatement (Third) of Agency § 4.01 cmt. g). This knowledge requirement may be fulfilled by actual knowledge, "willful ignorance" or by "knowledge of facts that would have led a reasonable person to investigate further." *Id.* (citing Restatement (Third) of Agency § 4.06 cmts. b, d); *Kristensen*, 879 F.3d at 1014 (citing Restatement (Third) of Agency §§ 4.01 cmt. b, 4.06 cmt. d). Willful ignorance applies where a defendant does not "know the material facts" but ratifies "with awareness that such knowledge was lacking. *Henderson*, 918 F.3d at 1074-75 (quoting Restatement (Third) of Agency § 4.01 cmt. b).

Here, Plaintiff states a claim under her ratification theory. As an initial matter, because Jackson did purport to contact Plaintiff on Defendant's behalf (Doc. 1 at 5), the doctrine of ratification is applicable. *Kristensen*, 879 F.3d at 1014. Plaintiff does allege that Defendant accepted the benefits of Jackson's conduct by taking "a portion of commission proceeds derived from any representation of a consumer by its" real estate agents and by taking "separate and exclusive" ownership of all brokerage relationships and listings generated by its real estate agents. (Doc. 1 at 7-8). Further, she argues that Defendant's business structure is "set up to remain willfully ignorant of the conduct of

one's contractor to avoid liability" (Doc. 16 at 15).  She bases this willful ignorance on Defendant's knowledge that many other associates similarly situated to Jackson have generated leads using methods that violated the TCPA which are "materially identical" to Jackson's methods. (Doc. 1 at 7-8; Doc. 16 at 15-17); *see, e.g.*, *Hollis*, 2025 WL 2711424, at *3.  Though the extent of Defendant's knowledge of the red flags permeating its real estate agents' activities is unclear at this point, Plaintiff's allegations, taken as true, are sufficient allow a reasonable inference that Defendant treats its real estate agents as independent contractors to give itself distance from their TCPA-violating conduct despite taking commission from and ownership over clients and listings, and providing lead-generation training.[6]

As such, Plaintiff states a claim as to Counts I and II under a theory of vicarious liability through ratification.  Defendant's Motion to Dismiss is denied to the extent that Plaintiff's claims rely on this theory.

## CONCLUSION

In sum, though Plaintiff fails to state a claim under a theory of direct liability or of vicarious liability through actual authority, she does state a claim as to both Count I and Count II under theories of vicarious liability premised on apparent authority and ratification.  Defendant's concerns over Plaintiff's ability to prove the degree of control or knowledge that it held over Jackson's conduct cannot be resolved on a motion to dismiss.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 12) is **GRANTED IN PART** and **DENIED IN PART**.  Should Plaintiff elect to file an amended complaint pursuant to this order, Plaintiff shall do so **within fourteen (14) days of the filing of this order.**

Dated this 9th day of March, 2026.

_G. Murray Snow_
G. Murray Snow
Senior United States District Judge

---

[6]Defendant is correct that the fact that it provides training does not itself suggest ratification or an agency relationship (Doc. 12 at 12); but the existence of trainings coupled with Defendant's purported lack of knowledge of its real estate agents' marketing activities does lend support to the plausibility of Plaintiff's claims of willful ignorance.